IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ONIKA STEVENS | : | NO. 2007-0002-2 |

MEMORANDUM

Bartle, C.J.                                                   April 16, 2008

      Defendant Onika Stevens has been indicted for conspiracy to import powder cocaine into the customs territory of the United States, conspiracy to distribute cocaine, possession of cocaine on board an aircraft with intent to distribute, and possession of cocaine with intent to distribute.[1]  See 21 U.S.C. §§ 841(a), 846, 952(a), 959, and 963.  Before the court is defendant's motion to suppress all statements she made to law enforcement officials.  She argues that she did not voluntarily, knowingly, and intelligently waive her Miranda rights and that her interrogators overbore her will such that her subsequent statements were not voluntary.  She has also filed a supplemental motion to suppress on the ground that her prior arrest was not supported by probable cause and was therefore illegal.  The court held a hearing on said motions and makes the following findings and conclusions.

---

1. Defendant Beatrice Lawrence was also charged in the indictment.  The motion of the government for a severance of the trials of the two defendants has been granted.

As a result of an anonymous tip, law enforcement officials were on the lookout for co-defendant Beatrice Lawrence on November 9, 2006 when she arrived at the Henry E. Rohlsen Airport in St. Croix to board a plane for New York City. Law enforcement had been told that she was a drug courier and that the drugs would be placed in her luggage in the baggage handling area after it had passed through customs and security but before it was loaded onto the plane. In the meantime, law enforcement had investigated the purchase of Lawrence's plane ticket. It learned that her ticket and that of defendant Stevens had been purchased at the same time and that they would be traveling together.

On November 9, 2006, both Lawrence and Stevens proceeded through customs at the airport without incident. They then took their luggage, as required of all passengers, to the Transportation Security Administration (TSA) station for inspection. Stevens' bag was opened. It contained only clothes and liquor. No drugs were found. Her bag was then placed onto a belt which traveled through a tunnel to the baggage handling area. While surveillance cameras were directed at the TSA station and at the baggage handling area, there were no cameras focused on the belt or the tunnel. Normally, it takes about one minute for luggage to reach the baggage handling area once it is placed on the belt. In this instance, it took seven minutes. When the bags of defendants reached the baggage handling area, they were placed onto a cart and taken to the awaiting plane

where they were loaded.  The passengers, including Lawrence and Stevens, boarded the plane in the meantime.

Before take-off, Senior Special Agent Eugene Thomas of Immigration and Customs Enforcement (ICE) notified the pilot that a search of the luggage would be conducted.  As a result, all passengers disembarked and returned to the airport's passenger waiting area.  Every piece of baggage was unloaded and placed beside the aircraft.  A Virgin Islands police dog, brought to the scene to sniff luggage for drugs, detected no contraband.  Agent Thomas then directed that the bags of Lawrence and Stevens be opened.  Found in each suitcase were ten bricks of white powder wrapped so as to vitiate the smell.  A field test confirmed that the substance was powder cocaine.

Agent Thomas called for the assistance of two female officers.  After identifying themselves, they escorted Lawrence and Stevens out of the passenger lounge at approximately 1:30 p.m. and placed them in separate holding cells at the airport. Agent Thomas read Stevens her Miranda rights.  See Miranda v. Arizona, 384 U.S. 426 (1966).  Lawrence was then taken to a separate room to be interviewed outside the hearing of Stevens.

Stevens remained in her holding cell for several hours until the interview of Lawrence was completed.  Subsequently, Stevens was moved to the interview room where Agent Thomas and his supervisor Special Agent Dennis Carter were present.  Agent

Carter read her her Miranda rights for the second time.[2] After reading each right, he paused and asked her if she understood it. In each instance she responded that she did. She further indicated her agreement to waive those rights after he read her a waiver statement.[3] She then printed her name on the waiver form and signed her name on a separate line at 5:33 p.m. Thereafter, Agent Carter took the lead in questioning her about the purpose

---

2. The rights read to her were:

> You have the right to remain silent.
>
> Anything you say can be used against you in court, or other proceedings.
>
> You have the right to consult an attorney before making any statement or answering any questions.
>
> You have the right to have an attorney present with you during questioning.
>
> If you cannot afford an attorney, one will be appointed for you before any questioning, if you wish.
>
> If you decide to answer questions now, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney.

3. The waiver form, which contained a statement of the Miranda rights, stated:

> I have had the above statement of my rights read and explained to me and I fully understand these rights. I waive them freely and voluntarily, without threat or intimidation and without any promise of reward or immunity. I was taken into custody at 1330 (time), on 11/09/06 (date), and have signed this document at 1733 (time), on 11/09/06 (date).

of her trip.  Defendant answered that she was headed to New York for shopping and would be staying at the Galaxy Hotel. Afterwards, she planned to travel to Miami to visit her brother. She also stated that she had obtained her suitcase from a cousin who had recently died.  When Agent Carter learned she had only $45 with her and asked her how she was going to do any shopping, she replied that money was going to be wired via Western Union. Agent Carter at that point told her that he and Agent Thomas had spoken to Beatrice Lawrence and knew the truth.  He also said she should think about her children.  According to the Agents, she then stated she wanted to start over and confessed that she had been recruited to bring illegal drugs into the continental United States.  She maintained that she was told it was to be "weed," that is, marijuana, and not cocaine.  During the interview, she was slightly upset and weeped some.  The interview lasted several hours.

      We first deal with the search of Stevens' luggage.  The Fourth Amendment generally protects an individual's property from a search without a warrant supported by probable cause.  However, one well-established exception to this requirement is a border search.  The broad power to conduct searches at the border without a warrant and without probable cause exists "to prevent smuggling and to prevent prohibited articles from entry."  United States v. 12,200 Ft. Reels of Film, 413 U.S. 123, 125 (1973). The sovereign always has the right "to control ... who and what

may enter the country."  United States v. Ramsey, 431 U.S. 606, 620 (1977).

     The Virgin Islands, acquired from the Kingdom of Denmark in 1917, is an unincorporated territory of the United States.  Congress has the power under Article IV, § 3, cl. 2 of the Constitution to make "all needful Rules and Regulations respecting the Territory ... belonging to the United States." Pursuant to this power, Congress has created a border for customs purposes between the Virgin Islands and the continental United States.  19 U.S.C. §§ 1401(h) and 1467; United States v. Hyde, 37 F.3d 116, 121 (3d Cir. 1994).  Our Court of Appeals has explained, "[A]s far as the interests of the sovereign are concerned, we perceive the interest of the United States in warrantless searches without probable cause at this "internal" border to be little different from its interest in such searches at its international borders."  Id. at 122.  Accordingly, the search of Stevens' luggage at the airport in St. Croix did not require a warrant or probable cause, and it survives any constitutional challenge.  The drugs found in her luggage supply the necessary probable cause for her detention and subsequent arrest.

     Regardless of the validity of the search or her arrest, Stevens claims that her later statements to Agents Thomas and Carter must be suppressed.  While it is undisputed that Stevens signed a form waiving her Miranda rights before she made any incriminating statements, she maintains that her waiver was not

voluntary, knowing, and intelligent.  Moran v. Burbine, 475 U.S. 412, 421 (1986); (citing Miranda v. Arizona, 384 U.S. at 444, 475).  The Government has the burden of proof by a preponderance of the evidence to establish that the waiver was effective. Colorado v. Connelly, 479 U.S. 157, 167-69 (1986).

   Defendant, who is twenty-six years old, left school in the tenth grade.  From the time she was in second grade, she tested in the mentally retarded range and was placed in a special education program throughout the remainder of her school years.  A psychological test performed when she was 10 years old showed her intellectual function to be in the 4th percentile, that is, at a point where ninety-six percent of children her age were functioning at a higher level than she.  Dr. Ann Bernard, a psychologist who testified at the suppression hearing on behalf of defendant, interviewed her at length and administered to her a number of intelligence, reading comprehension, and psychological tests.  Dr. Bernard stated that based on the Wechsler Adult Intelligence Scale Revised defendant's intelligence quotient was 68, putting her in the mentally retarded range of intellectual function.  Dr. Bernard further opined that Stevens has the mental age and maturity of a nine year old and that her reading ability was that of a person who had completed the second grade.  Her mother, who testified that defendant has been slow since second grade, helps defendant rear her four children and pays some of her bills.  Her mother also fills out various forms for her which

are necessary to obtain food stamps and other government services since defendant cannot do so herself.

There is no indication Stevens has had any previous encounter with the criminal justice system.  Dr. Bernard doubted that defendant understood the rights read to her.  Instead, in her opinion, defendant would try to save face by indicating she understood when she really did not.  According to Dr. Bernard, defendant often does not comprehend the implication of daily conversations and behaviors.  Stevens herself testified that she did not understand what was read to her and did not then know the meaning of the word *waiver*.

The Government's expert Derek Spencer, M.D. did not testify.  Instead, by agreement of the parties, his amended report was admitted into evidence.  Dr. Spencer concluded that, "[w]ith a bone fide diagnosis of Mental Retardation established before the age of eighteen, it is not possible to refute [defendant's] claim that she did not understand the Miranda warning."

As noted above, the Government must establish by a preponderance of the evidence not only that Stevens signed a waiver of her Miranda rights but that the waiver was voluntary, knowing, and intelligent.  Connelly, 479 U.S. at 167-69.  It is a two-part test.  As the Supreme Court stated in Burbine, 475 U.S. at 421:

> First, the relinquishment of the right must
> have been voluntary in the sense that it was
> the product of a free and deliberate choice
> rather than intimidation, coercion, or

>       deception.  Second, the waiver must have been
>       made with a full awareness of both the nature
>       of the right being abandoned and the
>       consequences of the decision to abandon it.
>       Only if the "totality of the circumstances
>       surrounding the interrogation" reveal both an
>       uncoerced choice and the requisite level of
>       comprehension may a court properly conclude
>       that the Miranda rights have been waived.

See also Colorado v. Spring, 479 U.S. 564, 573-74 (1987).

Here, defendant's waiver was clearly voluntary.  Agent Carter read her the Miranda warnings and the waiver provision in a calm and professional manner before any questioning took place.  Neither he nor Agent Thomas intimidated, coerced, deceived, or threatened defendant in any way.  When defendant printed her name on the waiver and then signed her name on a separate line, it was "the product of a free and deliberate choice."  Connelly, 479 U.S. at 169-70.

This does not end our analysis.  We must also decide whether she knowingly and intelligently waived her Miranda rights.  Id.; see also Spring, 479 U.S. at 573-74.  Defendant is a twenty-six year old woman whose I.Q. is in the mentally retarded range.  She reads at the second grade level and has the mental age of a nine year old.  She cannot fill out Government forms.  From the time of second grade forward, she was always in special education.  She needs the help of her mother to rear her children.  Moreover, there is no evidence that she had had any previous involvement with the criminal justice system or any prior familiarity with her rights under Miranda.  We find the testimony of Dr. Bernard to be credible.  Having observed Stevens

-9-

and heard her testify, we also fine her to be credible.  Most significant, however, is the evidence from Dr. Spencer, the Government's expert.  He opined that due to Stevens' mental retardation "it was not possible to refute her claim that she did not understand the Miranda warning."

I find and conclude that the Government has not met its burden of establishing that Stevens understood the Miranda rights being read to her or the meaning of the word *waiver*.  Based on the totality of the circumstances, the Government has not established that she had "the requisite level of comprehension" that would allow this court "properly [to] conclude that the Miranda rights have been waived."  Burbine, 475 U.S. at 421.

Because the Government has not proven that Stevens knowingly and intelligently waived her Miranda rights, all statements she made to law enforcement during her interview at the airport in St. Croix will be suppressed.

```
           IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
                      DIVISION OF ST. CROIX

UNITED STATES OF AMERICA        :        CRIMINAL ACTION
                                :
           v.                   :
                                :
ONIKA STEVENS                   :        NO. 2007-0002-2
```

ORDER

AND NOW this 16th day of April, 2008, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant Onika Stevens to suppress all statements made to law enforcement officials (Doc. #26) is GRANTED; and

(2) the supplemental motion of defendant Onika Stevens to suppress (Doc. #149) based on an allegedly invalid arrest is DENIED.

                                  BY THE COURT:


                                  /s/ Harvey Bartle III
                                  HARVEY BARTLE III         C.J.
                                  SITTING BY DESIGNATION